UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN STOKES,<br>                Plaintiff,<br>v.<br><br>COUNTY OF WAYNE,<br>                Defendant.<br>_____/ | Case No. 24-11012<br><br>Matthew F. Leitman<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL AND FOR EXTENSION OF DISCOVERY
(ECF No. 13)**

Before the Court is Plaintiff John Stokes's motion to compel discovery responses and motion to extend discovery and for related costs and fees as sanctions for Defendant Wayne County's conduct during discovery. (ECF No. 13). The District Judge referred this motion to the undersigned. (ECF No. 14). The motion is fully briefed, and the parties appeared before the undersigned on this matter during status conferences on October 2, 2025 and October 9, 2025. (ECF Nos. 15, 16, 17, 19). Plaintiff's motion to compel is **GRANTED IN PART AND DENIED IN PART**; his motion for sanctions is **DENIED**.

I.      BACKGROUND

After a lengthy, delay-filled discovery process, Plaintiff filed a motion to compel discovery responses on April 24, 2025. (ECF No. 13). Specifically, Plaintiff seeks full responses to Interrogatory Nos. 13, 21, and 22 and Requests for

Production ("RFP") Nos. 13 and 17.  (*Id.* at PageID.163).  Plaintiff served these discovery requests on Defendant on August 14, 2024.  (ECF No. 13, PageID.150; ECF No. 13-1).  Defendant served its responses on September 13, 2024.  (ECF No. 13-2).  Because Plaintiff's counsel's child was born shortly thereafter, he did not inform Defendant of the deficiencies in its initial discovery responses until November 7, 2024; this included deficiencies with the discovery requests at issue here.  (ECF No. 13, PageID.150).

After missing agreed-upon deadlines between the parties, Defendant informed Plaintiff's counsel it was finalizing its supplemental responses on December 19, 2024; at that time, Defendant also requested a protective order (and provided a draft to review) but did not condition its first supplemental responses on the entry of such an order.  (*Id.* at PageID.153-54; ECF No. 13-4).  Defendant shared its First Supplemental Responses the next day.  (ECF No. 13, PageID.154-55; ECF No. 13-5).  The supplemental responses did not address the issues with Interrogatory Nos. 13, 21, and 22 or RFPs 13 and 17.  There is no explanation in the record for Defendant's omission.

Plaintiff's counsel did not request to meet-and-confer with Defendant regarding the outstanding deficiencies until February 26, 2025; counsel also provided suggested revisions on the proposed protective order the same day.  (ECF

2

No. 13, PageID.155). There is no explanation in the record as to why Plaintiff's counsel waited more than two months to do so.

During the meet-and-confer process on March 17, 2025, the parties agreed to narrow RFP No. 17 to specific parameters including a timeframe;[1] Plaintiff's counsel also reminded Defendant of its proposed revisions for the protective order. (*Id.* at PageID.156). Defendant indicated that further supplemental responses would be produced soon, even "less than a week." (*Id.*). Even so, the parties agreed to adjourn scheduling order deadlines. (ECF No. 12).

Plaintiff's counsel provided the narrowed version of RFP No. 17 on March 24, 2025.[2] (*Id.* at PageID.157; ECF No. 13-9). When he did not receive supplemental responses from Defendant by April 7, Plaintiff's counsel requested an update; Defendant indicated it had finalized their second supplemental responses but were waiting on the revised parameters for RFP No. 17. (ECF No. 13, PageID.157; ECF No. 10). Plaintiff's counsel forwarded his previous email,

---

[1] RFP No. 17 originally read: "Please provide all documents reflecting all meetings, conversations, discussions, written correspondence, emails, statements, and telephone calls reflecting any complaint by employees about racial discrimination by Defendant." (ECF No. 13-1, PageID.213).

[2] Plaintiff's revised RFP No. 17 reads:

Complaints within the County Police Department, from January 1, 2015 to today, and which included and/or resulted in one of the following: (1) An EEO and/or EEOC filing; (2) A union grievance; (3) A formal written complaint to H.R.; (4) Any discipline for any party; and/or (5) A formal meeting with supervisors.

(ECF No. 13-12, PageID.343-44).

3

and Defendant provided its second set of supplemental responses on April 18, little more than a week before the close of fact discovery on April 28. (ECF No. 12 (regarding discovery deadlines); ECF No. 13, PageID.157-58; ECF No. 13-12).

From Plaintiff's perspective, Defendant's second set of supplemental responses were as deficient as the first. (ECF No. 13, PageID.158-59). For instance, Defendant indicated it had responsive information to Interrogatory Nos. 13, 21, and 22 and RFP No. 13; but—for the first time apparently—Defendant stated that production was contingent on a protective order. (*Id.*; ECF No. 13-12, PageID.339, PageID.342-43). Yet there was no acknowledgment from Defendant regarding Plaintiff's suggested revisions to the protective order. (ECF No. 13, PageID.159). Indeed, Plaintiff's counsel was not aware Defendant received his suggested edits until Defendant asserted they were unacceptable in their response brief to this motion. (ECF No. 15, PageID.354 (regarding Defendant's response); ECF No. 16, PageID.405-06 (regarding Plaintiff's counsel's reaction)).

Nor did Defendant respond to RFP No. 17, contending instead that Plaintiff broadened this discovery request rather than narrowing it. (ECF No. 13, PageID.159; ECF No. 13-12, PageID.343-44). In fact, Defendant's only issue with the original RFP No. 17 was apparently the lack of a timeline. (ECF No. 13-12, PageID.344 ("Defendant sought date ranges for clarification on the original request not a new and different request."); ECF No. 15, PageID.356-57 ("Plaintiff could

4

[have] simply provide[d] timeframe parameters relative to the initial discovery request."). Accordingly, Defendant interpreted the revised RFP as an entirely different discovery request. (ECF No. 13-12, PageID.343-44). *See also supra* notes 1-2.

As mentioned, Plaintiff seeks full responses to Interrogatory Nos. 13, 21, and 22 and RFP Nos. 13 and 17. Plaintiff also asks for sanctions in the form of an extension of discovery and an award of costs and fees for—what Plaintiff's counsel deems—wasted efforts pursuing supplemental responses from Defendant.[3] (ECF No. 13, PageID.169-172).

## II.   ANALYSIS

Since Plaintiff moves to compel production and for sanctions, the Court will address the related arguments in that order.

A.   Plaintiff's Motion to Compel

1.   Governing Standards

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

---

[3] Defendant's version of the facts underlying Plaintiff's motion does not differ by much. The only difference is Defendant's emphasis of Plaintiff's own delays and errors while minimizing its own. (ECF No. 15).

5

importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

2. Discussion

The Court begins with RFP No. 17. During the October status conferences, the Court addressed the primary issue regarding this discovery request, namely a temporal restriction. The parties deliberated on a time frame for RFP No. 17 and agreed to limit the originally composed RFP No. 17 to deputies who were once part of the Wayne County Sheriff's Department from 2014 to today. As the parties

have resolved the issue regarding RFP No. 17, the motion to compel is **DENIED AS MOOT**.[4]

Next, the Court turns its attention to Interrogatory Nos. 13, 21, and 22 and RFP No. 13. Defendant's supplemental responses to these discovery requests indicated that it would produce responsive documents once the Court entered an appropriate and agreed-upon protective order. (ECF No. 13-12, PageID.339, PageID.342-43). The Court entered the parties' agreed-upon protective order on September 19, 2025. (ECF No. 18). And Defendant provided its supplemental responses around the same time as the October status conferences.

Though Defendant previously represented that it had responsive information to Interrogatory No. 21 it was withholding pending the protective order, its supplemental response stated that it did not have responsive information. Defense counsel subsequently confirmed the lack of responsive information. Since Defendant's prior representation was erroneous and there is no responsive information, the motion to compel is **DENIED** regarding Interrogatory No. 21.

Though Defendant supplemented its responses to RFP No. 13 and Interrogatory No. 13, it confined its supplemental production to the period between 2018 and 2020 as that timeframe aligned with the tenure of then-Wayne County

---

[4] On October 17, 2025, defense counsel informed the Court that she produced responsive discovery materials for RFP No. 17. Plaintiff's counsel did not respond or otherwise indicate that the production was deficient.

7

Sheriff Benny Napoleon. During the October 9, 2025 status conference, defense counsel explained that no one in the Sheriff's Department could reinstate Plaintiff's police powers once his MCOLES certification lapsed, so Defendant unilaterally limited the temporal scope of its supplemental production. But these discovery requests covered a much broader timeframe—RFP No. 13 asked for materials from June 2016 to the present and Interrogatory No. 13 asked for materials from January 2018 to the present.

  The Court does not agree with Defendant's self-imposed temporal limitation on its supplemental production. Plaintiff's complaint is about alleged racial discrimination following his reinstatement to his former position at the Wayne County jail in November 2018. When Plaintiff sought to have his police powers restored thereafter, the County allegedly did nothing until early 2020 when it informed Plaintiff that he needed to provide a significant amount of identifying documentation to do so. Because of the COVID-19 pandemic, Plaintiff struggled to obtain some of the identifying documentation ultimately resulting in the lapse of his MCOLES certification. Plaintiff alleged he later learned of "a *continuing* racially discriminatory pattern of behavior" in which white officers were not required to jump through similar hoops before they were re-sworn in or re-certified. (ECF No. 1, PageID.6, ¶ 6) (emphasis added). The allegations in

Plaintiff's complaint also postdate 2020. (*Id.* at ¶ 24 (referring to the August 2022 denial of Plaintiff's application for reinstatement)).

In short, Plaintiff's complaint suggests that his MCOLES certification only lapsed because of the alleged pattern of *continuing* racial discrimination; that is, had Defendant not required Plaintiff to submit substantial identifying documentation—like it allegedly does not for white officers—then Plaintiff could have had his police powers renewed before his MCOLES certification lapsed. Additionally, if Defendant has not required white officers to overcome the same obstacles to reinstatement, then that speaks to the alleged ongoing pattern of racial discrimination. It therefore does not make much sense to limit discovery to Sheriff Napoleon's tenure, especially if the pattern of racial discrimination is continuing as alleged.

The motion to compel is **GRANTED** as to RFP No. 13 and Interrogatory No. 13. Defendant is **ORDERED** to supplement its responses to include responsive information and documents from January 2018 to the present **within twenty-one days of this Order**.[5]

---

[5] Though RFP No. 13 and Interrogatory No. 13 contain different timeframes, Plaintiff's counsel suggested that they each target the same kind of information during the October 9 status conference—the former merely seeks documents and the latter seeks information. Even though RFP No. 13 asks for documents starting in June 2016—unlike Interrogatory No. 13 which has January 2018 as its starting point—Defendant's supplemental production for both should be limited to January 2018 to the present. Considering that the initial disciplinary action against Plaintiff occurred in 2018, the Court does not see how documents predating 2018 fit within the scope of discovery here.

9

This leaves Interrogatory No. 22. Defendant limited its supplemental production to 2018 to 2020 for the same reasons articulated above. In turn, Plaintiff informed Defendant that one of the documents it produced—Exhibit C-1—would be responsive to Interrogatory No. 22 if it contained information for a longer period that was accurate and updated.[6] Again, the Court disagrees with Defendant on its temporal limitation; as such, Plaintiff's motion is **GRANTED**. Defendant is **ORDERED** to supplement Exhibit C-1 in response to Interrogatory No. 22 to include information from January 2018 to the present **within twenty-one days of this Order**. It should also go without saying that the information in Exhibit C-1 should be accurate and up to date if it is to be responsive to Interrogatory No. 22. The parties should therefore meet-and-confer to resolve any inaccuracies.

B. Sanctions

1. Rule 37(a)(5) Sanctions

The first issue regarding sanctions relates to Plaintiff's motion to compel. While Plaintiff points out that the Court must award sanctions if his motion to compel is granted under Federal Rule of Civil Procedure 37(a)(5)(A), he did not develop any further argument under that Rule. (ECF No. 13, PageID.161). And in

---

[6] Plaintiff's counsel also noted that one name appeared to be missing from Exhibit C-1. Defense counsel acknowledged this during the October 9, 2025 status conference and indicated it would provide updated information to address the omission.

any event, the Court did not grant in full Plaintiff's motion. Since Plaintiff's motion is granted in part and denied in part, the Court "*may* apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C) (emphasis added).

The Court will not do so here. From the Court's perspective, neither party was as diligent as it could have been during the discovery process. Consider the issue regarding the protective order. Defendant did not acknowledge Plaintiff's suggested revisions from December 2024 until it filed its response brief on May 8, 2025. If Defendant believed a protective order was necessary, one would expect Defendant to be more responsive. On the opposite side of the same coin, Plaintiff's counsel could have been more persistent in following up regarding the protective order. Plaintiff did not explain why he did not remind Defendant of his suggested revisions until late-February 2025.

To underscore this point, the parties managed to agree to a protective order over the course of a few weeks from August to September 2025 after the Court asked them about their progress on the matter. If the parties had agreed to a protective order earlier, it would have precluded some of the motion practice and allowed the parties to focus on the sufficiency of the supplemental productions.

As for RFP No. 17, the dispute appears to result from a miscommunication between the parties, not some insidious plot to prevent disclosure—especially since

11

the parties managed to resolve the related issue between the October 2 and October 9 status conferences. Sanctions related to the motion to compel are therefore **DENIED**.

    2.    <u>Rule 37(d) Sanctions</u>

Plaintiff also moved for sanctions under Rule 37(d)(1)(A)(ii) for what Plaintiff perceives as Defendant's failure to adequately respond to his discovery requests. As an initial matter, the Court bases Plaintiff's motion for sanctions on the same five disputed discovery requests at issue in the motion to compel. After all, his sanctions motion states that "[b]asic [discovery] requests submitted eight months ago remain outstanding," and Plaintiff only moved to compel responses to those five discovery requests. (ECF No. 13, PageID.169). As a sanction, Plaintiff asks for a thirty-day extension to the discovery deadline, "limited to the matters contained within Defendant's Second Supplement Discovery Responses and the five unanswered discovery questions." (*Id.* at PageID.172). He also seeks the costs and fees Plaintiff's counsel expended in his unfruitful efforts to obtain satisfactory supplemental responses. (*Id.* at PageID.169-172).

    a.    <u>Governing Standards</u>

Rule 37(d) provides an "avenue for sanctions based on a party's failure to respond after being served with discovery requests, and the 'majority view authorizes Rule 37(d) sanctions when a party's evasive or incomplete answers to

12

proper interrogatories [or requests for production] impede discovery.'" *Ferrer v. Detroit Club Mgmt. Corp.*, No. 22-cv-11427, 2024 WL 4642754, at *5 (E.D. Mich. Oct. 31, 2024) (quoting *Jackson v. Nissan Motor Corp.*, No. 88-6132, 1989 WL 128639, at *5 (6th Cir. Oct. 30, 1989)) (internal quotation omitted). *See Boodram v. Coomes*, No. 1:12-CV-00057d, 2015 WL 13783127, at *4 (W.D. Ky. July 1, 2015) (collecting cases using the majority rule in the Sixth Circuit)).

The leading case on the majority view in the Sixth Circuit seemingly remains the decision in *Bell v. Automobile Club of Michigan*, 80 F.R.D. 228 (E.D. Mich. 1978). *See Badalamenti v. Dunham's Inc.*, 896 F.2d 1359, 1363 (Fed. Cir. 1990) (applying Sixth Circuit case law at the time and relying on the *Bell* Court's analysis of the majority rule); *Boodram*, 2015 WL 13783127, at *4 (relying on *Bell* for the majority rule). In *Bell*, the defendants responded to interrogatories and represented that the sought after information would require calling or visiting individuals listed on thousands of cardex cards. *Bell*, 80 F.R.D. at 231. It came to light, however, that the defendants had compiled a book that contained the precise information the interrogatories targeted. *Id.* This Court held that the defendants' initial discovery responses were so misleading and evasive as to constitute a failure to answer. *Id.* at 232.

If the movant for sanctions satisfies the threshold requirement under Rule 37(d)(1)(A)(ii), then the Court may impose any of the sanctions included in Rule

13

37(b)(2)(A)(i)-(vi) for when a party disobeys a discovery order.  Fed. R. Civ. P. 37(d)(3).  "Although parties may move for the Court to impose a particular sanction, the Court has wide discretion to impose any sanction it finds appropriate."  *Saginaw Chippewa Indian Tribe v. Blue Cross Blue Shield of Michigan*, No. 1:16-CV-10317, 2023 WL 1452062, at *10 (E.D. Mich. Feb. 1, 2023) (citation omitted).  To determine the appropriate sanction under Rule 37(b)(2)(A), district courts weigh four factors: (1) "whether a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault"; (2) "whether the adversary was prejudiced by the party's failure to cooperate in discovery"; (3) "whether the party was warned that failure to cooperate could lead to the sanction"; and (4) "whether less drastic sanctions were first imposed or considered." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).  *See Victor v. Reynolds*, 649 F. Supp. 3d 499, 505-06 (E.D. Mich. 2023) (same).

Rule 37(d)(3) also provides that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" along with or rather than other sanctions, "unless the failure was substantially justified or other circumstances make an award of expenses unjust."  "Rule 37(d) therefore mandates the award of attorney's fees in most cases, regardless of what other sanctions are imposed." *Oro BRC4, LLC v. Silvertree Apartments*, No. 2:19-cv-4907, 2021 WL 2373667, at

14

\*7 (S.D. Ohio June 10, 2021) (citation modified). Again, however, the Court is vested with wide discretion to determine an appropriate sanction, if any. *Id.*

      b.    <u>Discussion</u>

Plaintiff did not expressly address the threshold inquiry under Rule 37(d); that said, he asserts that Defendant's responses (at least prior to Defendant's most recent supplemental responses) have been so deficient that they hardly constitute a response. The Court disagrees.

Defendant initially responded to the discovery requests at issue with privileged-based objections and objections based on concerns regarding overbreadth, undue burden, relevance, and proportionality. (ECF No. 13-2, PageID.247-48, PageID.254-56, PageID.271-72, PageID.274-75). What followed were a series of largely unexplained delays from both parties.[7] And as mentioned, there is no explanation for Defendant's omission of the discovery requests at issue here from its First Supplemental Responses—perhaps it did not believe its initial responses to be defective or it did not have supplemental information to provide at that time. Even so, Plaintiff did not point out this deficiency for more than two months; once again, there is also no explanation in the record for this delay. There is also no explanation for the parties' collective delay in agreeing to a protective

---

[7] The Court does not fault Plaintiff's counsel for any delay following the birth of his child.

15

order—an issue Defendant first raised on December 19, 2024, (ECF No. 13-4, PageID.292)—prior to Plaintiff filing his motion.

As for RFP No. 17, it appears more to the Court as if there was some confusion stemming from the March meet-and-confer. Plaintiff believed he needed to add a timeframe and make additional revisions; Defendant apparently only expected a revised timeframe. Defendant therefore treated Plaintiff's revised RFP No. 17 as a new discovery request. Yes, Defendant could have (and probably should have) continued to communicate with Plaintiff to resolve the issue—just like the parties should have stayed in communication regarding the protective order.

The facts here paint a different picture than that in *Bell*. In the latter situation, the defendants affirmatively misled the plaintiff while sitting on the precise information requested thereby impeding discovery. The Court does not see the same sort of manifest deception and evasion here; rather, the impediment to discovery stemmed from the delays and lack of diligence from both parties, not Defendant's discovery responses. *See Badalamenti*, 896 F.2d at 1363 (finding Rule 37(d) sanctions inapplicable as a threshold matter under the majority rule where the responding party raised confidentiality concerns and indicated it would not produce its responsive materials without first obtaining a protective order)).

16

Even if Plaintiff satisfied the threshold requirement for Rule 37(d) sanctions, the Court is not convinced sanctions are warranted based on the showing made here.

Begin with Plaintiff's request for an extension of discovery. Critically, this request is not made on a clean slate. Both times the District Judge entered the parties' stipulation and order to adjourn scheduling order deadlines, he added that "NO FURTHER EXTENSIONS WILL BE GRANTED." (ECF Nos. 11, 12). When he did so a second time, he reiterated emphatically that "I REALLY MEAN IT THIS TIME!" (ECF No. 12). Notably, this instruction did not include an exception for a sanctions-based extension. Given this stark admonition and the Court's wide discretion, the undersigned will not provide an additional extension here.

And in any event, Plaintiff's motion would fail on its merits. Though Plaintiff asserts that Defendant acted willfully and in bad faith, the Court is not convinced for many of the reasons stated above. Again, neither party is blameless in the delays in the discovery process, and many of those delays remain unexplained. As for RFP No. 17, this appears more so to be a misunderstanding or miscommunication between the parties regarding the March meet-and-confer.

As for prejudice, Plaintiff's showing is weak. He argues that "Defendant's willful discovery violations have already resulted in a delay" in this case. (ECF

17

No. 13, PageID.169). But as stated, both parties are responsible for delays during discovery in this case. Plaintiff's counsel also complained that Defendant's delays forced him to prepare for depositions without full and complete discovery responses. (*Id.* at PageID.169-70). Yet Defendant pointed out that Plaintiff's counsel ultimately cancelled two of those depositions, (ECF No. 15, PageID.358-59). Plaintiff did not explain why he did so in his reply brief. Nor was there any explanation from Plaintiff as to how the discovery at issue in the motion to compel factored into his preparations for the two other depositions he did conduct.

As to the third factor, Plaintiff concedes that "Defendant has not previously been warned about discovery violations in this case." (ECF No. 13, PageID.170) (emphasis omitted). Instead, Plaintiff relies on Defendant's regular participation in "State and Federal court cases" to infer its familiarity with "the full range of discovery sanctions." (*Id.*). But Plaintiff cites no authority permitting the Court to weigh this factor in his favor just because of Defendant's participation in other lawsuits; indeed, if that were the case, one may expect there to be a cite to cases sanctioning Wayne County. Yet such a citation is absent from Plaintiff's briefing.

As for the final factor, the Court has not previously sanctioned Defendant in this case. And as discussed below, the Court has considered an alternative sanction—an award of attorney's fees and costs—and does not believe that sanction is warranted either.

18

At bottom, Plaintiff's request for an extension of discovery as a sanction is **DENIED**.

That leaves Plaintiff's request for an award of fees and costs under Rule 37(d)(3). The Court will not grant this request given that the circumstances of this case "make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). To reiterate, both parties bear responsibility for how discovery has proceeded in this case. Plaintiff may not have needed to resort to a motion to compel had both parties stayed in communication regarding the protective order. Better communication between the parties regarding RFP No. 17 also would have resolved that matter as well. Given the Court's discretion and this record, Plaintiff's request for an award of fees and costs is also **DENIED**.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is **GRANTED IN PART AND DENIED IN PART**. Defendant must further supplement its production to Interrogatory Nos. 13 and 22 and RFP No. 13 **within twenty-one days of this Order**. Plaintiff's motion for sanctions is **DENIED**.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as

error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: November 5, 2025                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge